**James Charles ANDERSON, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 38344.**

Court of Criminal Appeals of Texas.

June 16, 1965.

Paul W. Wisdom, Jr., Dallas (Court Appointed Attorney), for appellant.

Henry Wade, Dist. Atty., Jim Miller, Jim Zimmermann and Malcolm Dade, Asst. Dist. Attys., Dallas, and Leon B. Douglas, State's Atty., Austin, for the State.

WOODLEY, Judge.

The offense is murder; the punishment, life.

The indictment alleged that appellant voluntarily and with malice aforethought killed Tom Tolivar by cutting and stabbing him with a knife.

Police officers patrolling in the vicinity about 9 P.M. observed a colored man lying in the street in the 3700 block of Wendelkin Street in Dallas and a '56 Buick with the door open.

"There was a reddish-brown substance to the right of the vehicle and upon the grass and on the sidewalk and up in the yard here and to the rear of the car on the pavement all the way around to on the east side of the car and there was a big pool of blood, correction, reddish-brown substance, where the body lay.

"Q. Was there any of the reddish-brown substance on the body?

"A. Yes, sir."

The state's evidence, consisting of the testimony of appellant's three companions; his girl friend Pruidessi (or Pure Dessie) Greer who had borne a child by him, her mother Ozell Greer and Ozell's boy friend James Mabry, reveals that on April 4, 1964, the four were together at Paulette's Cafe. They went from there to the Paradise Inn operated by appellant's brother, arriving sometime after dark. They got ready to leave and appellant arranged with the deceased to drive them for a fee.

The four got in the '56 Buick automobile with the deceased and after traveling for a distance appellant instructed the deceased to turn and let him out. He did so and the four got out at the intersection of Colonial and Wendelkin.

There was some conversation in regard to payment for the ride. Appellant said he would take care of it.

As the car started to pull away appellant stabbed the deceased and got him out of the car. The deceased ran for a short distance and appellant continued his assault. After the deceased fell in the street appellant kicked him in the head.

All of the four that had been passengers in the deceased's car then fled.

There was a trail of blood around the '56 Buick and to where the body of the deceased was found.

Pathologist B. W. Henderson, who performed the autopsy, testified that there were seven stab wounds on the body of the deceased two of which could have been fatal,

the wound which, in his opinion, caused death being "a stab wound of the chest and the penetration of the base of the aorta resulting in a strangulation of blood in the pericardial sac, the sac that surrounds the heart which is a lethal type of wound," a wound which would cause death within a matter of minutes.

Appellant's confession made to City Detective H. M. Moore on April 9, 1964 was introduced in evidence which reads, in part: "Last Saturday night, April 4, I was with my girl friend, Pure Dessie Greer, and her mama, Ozella Greer, and Ozella's boy friend, James Mabry. We were at my brother's place, The Paradise Inn. We got ready to leave, and a friend of mine got a man to take us home. I was to pay this man a dollar to take us. We went out and got in the man's car, a black and white 56 or 57 Buick. This man was driving up Colonial Street. I told him to 'turn here, man, and let me out'. He made a right turn on Metropolitan Street, and stopped at Wendelkin. We all got out of the car, and the man asked for the dollar, and said something. I told him I would not give him his dollar, if he was going to be so smart. He said he would get his dollar, and I started around on the driver's side. He pulled off and ran over my feet. I caught hold *to* the window and opened the door, and reached in and stabbed the man in the shoulder. My girl friend's mama was trying to pull me off of the man. She was pulling on me, and I was pulling on the man. We drug him out of the car. The man got loose, and ran round to the driver's side of the car. I caught him and stabbed him again. He ran back on the other side of the car. I caught him again and stabbed at him but I missed him. He caught hold of my arm. We fought over the knife. The people with me came up and grabbed me. The man got loose and ran up in front of the car and fell in the street. Pure Dessie and I ran down the street and asked a boy I know if he would take us to West Dallas. He said, 'Yes', but him and a woman was fussing. We ran on down the street, and Pure Dessie

got a boy she knew to take us to my mama's house."

Prior to the confession being offered in evidence, upon motion of appellant alleging that it was not voluntarily made, hearing was had in the jury's absence.

At such hearing appellant testified that Officer Moore told him that if he wanted to see Puridessi go home to sign the statement and that the reason he signed the statement was so that he would let Puridessi go home.

Officer Moore, being interrogated by the court, testified:

"Q. Now, Detective, the Defendant said when he took the stand here, he implied a threat by your saying this to him: 'Did I want to see her go home,' meaning Puridessi. Did you imply, did you threaten him in that manner saying or implying that if he didn't sign the statement, that she couldn't go home? * * * Did you tell him, the Defendant, this statement in talking to him to get him or induce him to sign this statement saying: 'If you want to see her go home,' meaning Puridessi, or whatever her name was.

"THE WITNESS: No sir, I didn't.

"Q. Did you make that statement?

"A. No, sir, I did not.

"Q. You did not make that statement?

"A. I did not.

"Q. You didn't say to him 'Did I want to see her go home?'

"A. No, sir."

Other testimony of Officer Moore at the hearing before the court showed that the warning required by statute was given and that the confession was voluntarily made, reduced to writing and signed after such warning.

At the conclusion of such hearing, the trial judge held that the statement was voluntarily and freely given in conformity with the statutes concerning confessions and that there were no threats or promises made to induce the defendant to make a confession or give or sign the same.

 We overrule appellant's contention that the evidence before the trial judge showed that the confession was not voluntarily made or that it was inadmissible as a matter of law, or that appellant was deprived of an adequate evidentiary hearing productive of reliable results concerning the voluntariness of the confession required in Jackson v. Denno, 378 U.S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908.

Appellant did not testify before the jury and no evidence was offered raising an issue before the jury that the confession was not voluntarily made, as Officer Moore testified, and no such issue was submitted to the jury.

We find no error in regard to the admission of the confession.

 The remaining claim of error relates to the following.

The indictment having been read and the defendant having answered that James Charles Anderson was his name, the court asked:

"James Charles Anderson, what is your plea?

"MR. WISDOM: Not guilty, Your Honor.

"THE COURT: I have to hear it from him.

"THE DEFENDANT: Not guilty."

It is contended that the court's statement, "I have to hear it from him," necessarily conveyed to the jury the impression that the plea of not guilty was a surprise to the court.

It is not clear whether the foregoing occurred upon an arraignment of the defendant (Art. 499, 450 C.C.P.) or upon his plea (Art. 520 C.C.P.)

Be this as it may, the claimed error was not preserved by objection or exception.

 Under the provisions of Art. 847 Vernon's Ann.C.C.P., unless it appear to the contrary by bill of exception, this Court must presume that the jury was properly impaneled and sworn; that the defendant was arraigned and that he pleaded to the indictment.

 The evidence is sufficient to sustain the conviction and we find no reversible error.

The judgment is affirmed.